# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.T. and S.T.**

**No. 19-0692** (Harrison County 19-JA-35-2 and 19-JA-36-2)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother G.T., by counsel Dreama D. Sinkkanen, appeals the Circuit Court of Harrison County's June 18, 2019, order terminating her parental rights to J.T. and S.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Allison S. McClure, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she neglected the children and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2019, the DHHR filed an abuse and neglect petition against the parents alleging that they had an extensive history of Child Protective Services interventions due to substance abuse, domestic violence, criminal histories, and chronic homelessness. Specifically, the DHHR alleged that the children had lived in unsafe and unsanitary living conditions or had been homeless, resulting in the neglect of the children's hygienic, medical, educational, nutritional, and clothing needs. The most recent referral stated that the family was sleeping in the streets of Clarksburg, West Virginia, and the DHHR, as well as several other social services organizations, attempted to help the family. However, the parents failed to follow through with services and, as a result, the DHHR filed the underlying abuse and neglect petition.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The circuit court held an adjudicatory hearing in April of 2019. The parents failed to appear, but counsel represented them. Petitioner's counsel requested a continuance, but the circuit court denied the motion. The DHHR presented evidence that the services provided to the parents prior to the filing of the petition were extensive and included in-home safety and protection plans with the assistance of relatives, in-home safety services, assistance with obtaining housing, and services to address their issues with domestic violence and substance abuse. The DHHR presented the testimony of a worker who stated that she visited the parents' temporary housing, which was infested with lice and covered in filth, including dog feces throughout the living space. She further testified that the father threatened her and petitioner with physical harm in front of the children. Another DHHR worker testified that petitioner told her that she planned to attend a Suboxone drug treatment program, but she never enrolled into such a program. She also testified that the father told her that petitioner had a history of drug abuse and he worried about her drug addiction. The DHHR worker testified that despite the DHHR's efforts, the parents continued to divert their income, such as petitioner's social security payments, towards their drug addictions and were unable to provide for the basic needs of the children. Ultimately, the circuit court adjudicated the parents as abusing parents.

In May of 2019, the circuit court held a final dispositional hearing. Petitioner moved for a post-adjudicatory improvement period; she testified that she had secured a stable residence and would agree to the terms and conditions of a post-adjudicatory improvement period. However, the circuit court denied the motion, finding that petitioner was unlikely to fully participate in an improvement period due to her total absence since the beginning of the proceedings and her failure to participate in any remedial services offered by the DHHR, prior to and during the proceedings. The DHHR then moved to terminate petitioner's parental rights and explained that it offered services to petitioner during the proceedings, but she failed to participate or otherwise communicate with the DHHR. Ultimately, the circuit court concluded that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, the circuit court terminated petitioner's parental rights by order entered on June 18, 2019.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided

---

[2]The father's parental rights were also terminated below. According to respondents, the permanency plan is for the children to be adopted in their relative foster placement.

2

the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, we find no error in the proceedings below.

First, petitioner argues that the circuit court erred in finding that she neglected the children because her chronic homelessness was based solely on a lack of financial means. We disagree.

We have previously noted as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, pursuant to West Virginia Code § 49-1-201,

"[a n]eglected child" means a child: (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent. Despite petitioner's argument that the DHHR failed to prove that her inability to provide for her children "was the result of anything other" than her "lack of financial means," the record indicates that petitioner was severely addicted to drugs and refused remedial services. Petitioner also fails to explain how her alleged lack of financial means resulted in her temporary housing's condition constituting a danger to the children's health. Further, the record indicates that the DHHR and other social service programs made several attempts to work with petitioner to place her and the children in suitable and safe housing, but she refused to follow through with services. Moreover, the record indicates that petitioner's monthly supplemental social security payments and other assistance should have been adequate income to provide for the family's living expenses, but petitioner's substance addiction "dissipated family resources that could have been used for housing and care of the children." Given these facts, there is no indication that petitioner's inability to obtain housing was primarily due to a lack of financial means, and,

therefore, the circuit court did not err by finding that the children were neglected pursuant to West Virginia Code § 49-1-201.

Petitioner next argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. Petitioner contends that she was likely to fully participate in an improvement period as evidenced by the fact that she obtained housing with a friend and was willing to participate in rehabilitative services. We disagree and find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). Here, the circuit court did not find petitioner's testimony regarding her willingness to participate in an improvement period to be credible because she had been absent throughout the proceedings and completely failed to communicate with the DHHR or cooperate with services in any way. Despite having counsel and the DHHR's services to help transport her, petitioner failed to attend the preliminary hearing, the adjudicatory hearing, or any multidisciplinary team meetings. The record clearly supports the circuit court's denial of a post-adjudicatory improvement period as petitioner failed to comply with offered services, communicate with the DHHR and service providers, or fully participate in the proceedings below. Accordingly, we find no error.

Lastly, petitioner argues that the circuit court erred in terminating her parental rights upon findings that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for the children's welfare. She further argues that the circuit court should have imposed a less-restrictive dispositional alternative to the termination of her parental rights.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. "'No reasonable likelihood that the conditions of neglect or abuse can be substantially corrected' means that based upon the evidence before the [circuit] court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(c). Further, West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes one in which

> [t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[ren], as evidenced by the continuation or insubstantial

4

diminution of conditions which threatened the health, welfare, or life of the child[ren].

The record establishes that petitioner failed to follow through with the DHHR's in-home safety plans or accept help from other social service programs prior to the filing of the petition. Moreover, evidence presented during the proceedings established that petitioner refused services, failed to acknowledge her substance abuse problems, and failed to recognize the dangers the children faced while in her care. Although petitioner appeared at the final dispositional hearing, she failed to appear at any prior proceedings or communicate with the DHHR throughout the proceedings. As petitioner clearly did not respond to or follow through with the DHHR's rehabilitative efforts, we find no error in the circuit court's finding that there was no likelihood that the conditions of abuse and neglect could be corrected in the near future.

We likewise find that the record supports the termination of petitioner's parental rights as necessary for the children's welfare. While petitioner contends that "having a positive relationship with a biological parent is beneficial to a child," petitioner fails to recognize the harm she inflicted upon the children and the danger she placed them in due to her substance abuse, chronic homelessness, and overall inability to parent. The record also shows that petitioner made no concerted effort to arrange visitations with the children after they were no longer in her custody. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Here, the children deserve permanency, which can be achieved through adoption in their relative foster placement with their half-sibling. As such, the record supports the finding that termination of petitioner's parental rights was necessary for the children's welfare.

To the extent petitioner claims that she should have been granted a less-restrictive disposition because she may eventually be able to correct the conditions of abuse and neglect, we note that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and termination of petitioner's parental rights was necessary for the children's welfare, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 18, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison